[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1298

UNITED STATES,

Appellee,

v.

JULIO RAMIREZ-BURGOS,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. District Judge] 



Before

Cyr, Stahl and Lynch,
Circuit Judges. 



Julio Ramirez-Burgos on brief pro se. 
Guillermo Gil, United States Attorney, Nelson Perez-Sosa, 
Assistant United States Attorney, and Jose A. Quilles-Espinosa, Senior 
Litigation Counsel, on brief for appellee.



MAY 21, 1997


Per Curiam. Defendant Julio Ramirez-Burgos was 

convicted by a jury of aiding and abetting in two armed

carjackings in violation of 18 U.S.C. 2119, and 18 U.S.C. 

2, and of using a weapon during the commission of a violent

crime in violation of 18 U.S.C. 924(c). He was sentenced

to a term of 35 years' imprisonment. 

On appeal, defendant seeks to overturn his

conviction on the grounds that (1) the prosecution allegedly

presented perjured testimony, to wit, the testimony of

defendant's accomplice, (2) the court erred in failing to

suppress the two victims' identifications of defendant, (3)

the evidence was otherwise insufficient to prove that

defendant participated in the crimes, and (4) the court erred

in admitting evidence of a rape he committed during one of

the carjackings. He also asserts multiple challenges to the

computation of his sentence.

Background  Background 

Viewed in the light most favorable to the verdict,

the evidence at trial showed that by prearrangement,

defendant and his accomplice, Daniel Montanez-Rosa

("Daniel"), were each carrying a revolver when they accosted

their first carjacking victim, Nancy Rosada-Santiago

("Nancy"). Brandishing a weapon, one of the men forced Nancy

to cede control of her Pontiac Sunbird.

-2-

The pair then drove around in Nancy's car searching

for a second victim -- all the while holding Nancy against

her will, guns pressed against her. She was forced to lie

low in the front passenger seat, facing the door, while the

men questioned her about her family and personal life, stole

her cash, jewelry and telephone beeper, and threatened her

children and her life.

Spying a second likely victim, Kassandra Rivera-

Boujoven ("Kassandra"), the men rammed Nancy's car into

Kassandra's Mitsubishi. Again brandishing a gun, Daniel took

over the Mitsubishi, forcing Kassandra to lie down on the

passenger seat of her car, face toward the door. 

Now in control of two cars and two women victims,

the carjackers continued on their journey toward a site where

they could sell the stolen jewelry and buy drugs. Along the

way, defendant stopped Nancy's car, forced her to undress,

and forcibly raped her.

During the rape the car's interior light was on,

allowing Nancy to see the defendant's face. She also could

hear Daniel yelling from a distance, urging defendant to

"hurry up." With a final instruction to Nancy to remain at

the site or her family would "pay" for it, "especially [her]

little girl," defendant exited the Pontiac and climbed into

the back seat of the Mitsubishi -- leaving Nancy kneeling

-3-

against the passenger seat of her car, traumatized, hurt, and

suffering from vaginal bleeding.

Together again and driving about in the Mitsubishi,

the two men now turned their attention to Kassandra.

Pressing a gun to her ribs, they questioned her about her

personal life, rifled through her purse, stole her jewelry,

threatened her life, and argued between themselves about how

to drug her and kill her. 

At one point they stopped the car at a housing

project in order to buy drugs, and again at a gas station to

get water with which to mix the drugs. As they were

injecting themselves with the drugs, a police car approached,

lights flashing. In the light, Kassandra clearly saw the

defendant's face, and his gun. Threatening to shoot her if

she did not turn away, defendant also ordered Daniel to "take

off." A high speed chase ensued which ended with a crash. 

The two men were arrested at the crash site.

Kassandra was discovered in the wreckage wedged beneath the

glove compartment. She was pried from the car, semi-

conscious, hysterical, and unable to walk. 

Defendant testified that he was not involved in

either of the carjackings, but had unwittingly climbed into

the back seat of Kassandra's Mitsubishi, unarmed, just before

the police chase. By "sheer happenstance," he claims, the

real carjackers (Daniel and an unidentified second man) must

-4-

have interrupted their crime spree at the same time and place

(the housing project) where defendant had gone to buy drugs.

Allegedly without any knowledge of the crimes, nor the

existence of the presumed real second carjacker, defendant

must have unwittingly switched places with the real second

carjacker -- joining Daniel in the Mitsubishi for the sole

purpose of shooting-up drugs. 

Defendant theorizes that Daniel's testimony was a

fabrication designed to inculpate defendant in a rape which

Daniel himself had perpetrated -- and that both Kassandra and

Nancy were mistaken in their identifications of defendant. 

(1) Alleged Perjury (1) Alleged Perjury 

Defendant asks this court to infer that Daniel's

testimony was perjured -- and that the prosecution knew it --

as shown by inconsistencies between Daniel's testimony and

that of the complaining witnesses; Daniel's own prior

inconsistent statements, confessed lies in other cases, and

prior criminal convictions. A knowing presentation of

perjured testimony by the prosecution violates a defendant's

right to due process. See United States v. Tavares, 93 F.3d 

10, 14 (1st Cir.) (citations), cert. denied, 117 S. Ct. 373 

(1996). 

However, "it is axiomatic that inconsistent

testimony is not per se perjurious." United States v. Gary, 

74 F.3d 304, 314 (1st Cir.), cert. denied, 116 S. Ct. 2567 

-5-

(1996); see also United States v. Lebon, 4 F.3d 1, 2 (1st 

Cir. 1993). Nor is perjury conclusively shown here by adding

to the mix the circumstantial evidence that Daniel lied

before and engaged in other acts of dishonesty.

Defendant did not ask the trial court to make a

finding of perjury. "We decline his invitation that we now

find wilful intent to provide false testimony based on no

more than . . . inconsistenc[ies]" and character evidence.

Tavares, 93 F.3d at 14.  

(2) Motion to Suppress the Identifications (2) Motion to Suppress the Identifications 

Defendant challenges the denial of his motion to

suppress the complaining witnesses' line-up identifications

of him, and presumably the admissibility of their later in-

court identifications, as tainted by a prior show-up and

suggestive conditions at the line-up. Identifications made in

circumstances that are so impermissibly suggestive as to give

rise to "a very substantial likelihood of irreparable

misidentification" are not admissible in keeping with due

process. Bouthot v. United States, 878 F.2d 1506, 1514 (1st 

Cir. 1989) (quoting Simmons v. United States, 390 U.S. 377, 

384 (1968)). 

Defendant claims that (1) Kassandra's

identification was impermissibly tainted because Kassandra

saw the defendant being taken by his keepers through a

hallway at the police station to the line-up room; and (2)

-6-

both of the complaining witnesses' line-up identifications

were tainted because defendant was distinctively clothed

(allegedly in a tee shirt and blue jeans), and his face was

swollen, bruised and bleeding. His version of the line-up

was supported by his wife, Sonia Maria Vazquez-Rosa

("Sonia"), who testified that she was in the police station

hallway and there saw her husband being led past Kassandra on

his way to the line-up, tee shirted and battered. 

Other testimony about the line-up, however, was to

the contrary. Kassandra denied that the alleged accidental

show-up had occurred, as did the police officer who

accompanied Kassandra before and during the line-up. They

denied seeing any swelling, bleeding or bruising on the

defendant's face. His clothing, they said, was substantially

the same as that of the other participants, including an

identical over-the-trousers collared shirt supplied to all

participants by the police. Contemporaneous police

photographs corroborated this version of the line-up. 

The district judge found, as fact, that the alleged

accidental show-up had not occurred; and that defendant's

face was not impermissibly marked nor his appearance

otherwise suggestive. The findings reflect a "reasonable

view of the evidence," and incorporate credibility

determinations which are necessarily entitled to special

deference by an appellate tribunal. United States v. De 

-7-

Jesus-Rios, 990 F.2d 672, 676 (1st Cir. 1993); see also 

Bouthot, 878 F.2d at 1513-14 n.8. 

Seeing no ground for disturbing the court's factual

determination that the identification procedure was not

impermissibly suggestive, we need not reach the second prong

of the due process issue, i.e., the likelihood of

misidentification. See United States v. Guzman-Rivera, 990 

F.2d 681, 682 (1st Cir. 1993). In any event, as discussed

below and in the margin, the victims' identifications were

reliable in light of the relevant second-prong factors.1  1

(3) Sufficiency of the Evidence (3) Sufficiency of the Evidence 

Defendant argues that there was insufficient

evidence to identify him as a participant in the crimes, at

least in the absence of Daniel's (allegedly perjured)

testimony. The argument is faulty for two reasons.

First, Daniel's testimony, though inconsistent in

part with the other eyewitnesses, was not incredible. His

credibility was subjected to sustained and searching cross-

examination. The jury was instructed on the possibility of

 

1As applied in this case, the second-prong factors set 1
forth in De Jesus-Rios, 990 F.2d at 677, show: (1) Each of 
the complaining witnesses had an opportunity during the crime
to view the defendant at close range, (2) both testified that
their gazes were fixed on defendant during those moments, (3)
their descriptions to the police, while vague and omitting
defendant's moustache, were consistent with defendant's
appearance, (4) both identified the defendant with certainty,
and (5) the line-up was held within 24-36 hours after the
crime. 

-8-

problems with testimony of this type. The choice was for the

jury, not for this court. See United States v. Laboy- 

Delgado, 84 F.3d 22, 27 (1st Cir. 1996). 

Second, and in any event, defendant was positively

identified in court by both of the complaining witnesses as

an armed and violent participant in the carjackings. Despite

gaps in each witness's ability to see during the respective

crimes, each identification had a substantial foundation and

was corroborated by other evidence. 

Nancy testified that she first saw the defendant

only briefly, as he entered her car. She then saw his face

clearly in the car light for several minutes as he raped her.

A piece of paper found in Nancy's purse, which was retrieved

after the crime from her car, bore the defendant's

fingerprint.

Nancy's testimony also corroborated the

identification of defendant as the back-seat carjacker of

Kassandra's vehicle. As defendant drove away in another car,

Nancy testified, he reminded her of his threats against her

child, and told her to call him on the telephone beeper which

he had stolen from her. Substantially the same words were

overheard by Kassandra, shouted from her car window by the

second of her car's invaders (whom she could not yet see). 

Kassandra then heard this second carjacker's voice

continuously, enabling her to testify with certainty that it

-9-

was he who had initially climbed over her crouched body into

the back seat of her car, held a gun to her ribs, and then

exited and reentered the vehicle at the housing project.

During this stop, she said, too, the back-seat carjacker

stood right next to the car, his body continuously in her

line of sight. True, she first saw defendant's face, and

gun, only when the police chase began. But defendant spoke

then, too, and she saw the face connected to this voice at

close range, in good lighting, and with fixed attention. 

To be sure, cross-examination revealed that each of

the complaining witnesses was extremely frightened during the

crime, and still upset at the time of the line-ups. Their

respective opportunities to see the carjackers had been

limited by darkness and the twisted postures they had been

forced to assume on the passenger seats of their automobiles.

In addition, each gave only a general description of the

culprits when first questioned, and each testified that the

first carjacker to approach her car was partly masked by a

tee shirt pulled up over his mouth and nose. Nancy even

admitted that she never saw the first carjacker's face, and

was not at all able to identify Daniel. 

These were good arguments, offered to the jury in

an attempt to cast doubt on the credibility of the victims'

identifications. In addition, defendant challenged the

scientific evidence, pointing out that much of it was

-10-

inconclusive, and someone else might have wrongly transported

his fingerprint to Nancy's car. And he elicited substantial

testimony which tended to impeach Daniel's credibility. 

Having heard all of the evidence, however,

including defendant's own testimony, the jury convicted the

defendant. Viewed in the light most favorable to the

verdict, there was more than ample reliable identification

evidence which "would allow a rational jury to determine

beyond a reasonable doubt that the defendant [was] guilty as

charged." United States v. Sullivan, 85 F.3d 743, 747 (1st 

Cir. 1996) (quoting United States v. Mena-Robles, 4 F.3d 

1026, 1031 (1st Cir. 1993)), cert. denied, 114 S. Ct. 1550 

(1994); see also Guzman-Rivera, 990 F.2d at 682-83.  

(4) Evidence of the Rape (4) Evidence of the Rape 

Defendant also assigns as error the rejection of

his motion to exclude evidence of the rape; arguing that rape

is not an "element" of the offense, but only a sentencing

enhancement issue. We have travelled this road before, and

rejected similar arguments under this statute. See United 

States v. Cruz-Kuilan, 75 F.3d 59, 60-61 (1st Cir. 1996) 

(finding proof of victim's death admissible to show a taking

by force and violence); United States v. Rivera-Gomez, 67 

F.3d 993, 995 (1st Cir. 1995) (finding proof of death

admissible to show use of force and violence, although death

is not an independent element of offense); United States v. 

-11-

Rivera, 83 F.3d 542, 545 (1st Cir. 1996) (upholding 

admissibility of evidence of rape which provided a "crucial

chapter" in narrative of events and critical proof of

possession of a weapon).

Of course, in and of itself, a rape is not an

essential element of the crime of carjacking as defined in

the Anti Car Theft Act, 18 U.S.C. 2119 (1992).2 See 2 

Rivera-Gomez, 67 F.3d at 996 (defining statutory elements). 

However, if a carjacker chooses rape as the means of "force,"

"violence," or "intimidation" by which to seize control of a

vehicle, it amounts to the same thing. 

In this case the prosecution showed that Nancy's

car was first taken from her by intimidation with a gun, not

 

2 The 1992 statute provides: 2

Whoever, possessing a firearm as defined in section
921 of this title, takes a motor vehicle that has
been . . . in interstate or foreign commerce from .
. . the person of . . . another by force and
violence or by intimidation, or attempts to do so,
shall --
(1) be fined . . . or imprisoned not more than
15 years or both
(2) if serious bodily injury (as defined in
section 1365 of this title) results, be fined under
this title or imprisoned not more than 25 years, or
both . . . . 

The statute has since been amended. In 1994, Congress
substituted "with intent to cause death or serious bodily
harm" for "possessing a firearm as defined in section 921."
In October, 1996, Congress clarified subsection (2) by
expressly providing that "serious bodily injury" also
includes sexual assaults violative of 18 U.S.C. 2241,
2242.

-12-

by rape. The later rape, nonetheless, accompanied by a

veiled threat to do the same to her daughter, terrorized

Nancy into complying with the carjackers' command that she --

with her car -- remain stationery for some time at the spot

where the carjackers left them. Thus the rape, like the

earlier brandishing of the gun, provided the intimidation by

which the carjackers extended their control of the victim and

her automobile. Compare Rivera, 83 F.3d at 545 (holding 

evidence of a rape admissible on other issues, but not

essential to prove a taking by "force and violence," where

the rape was not instrumental in the taking nor retention of 

the car). 

Evidence of the rape was of critical relevance, in

any event, to the jury's understanding of Nancy's

identification of the defendant. And it provided a "crucial

chapter" in the narrative that linked the defendant to the

second carjacking. Rivera-Gomez, 67 F.3d at 997. Given the 

value of this evidence as directly probative of two elements

of the offense, the court did not abuse its discretion under

Fed. R. Evid. 403 in admitting it, despite any risk of unfair

prejudice. Id. at 996. "Though lurid, it is part of what 

old-fashioned lawyers might call the res gestae." Id. at 

998. 

Sentencing Sentencing 

-13-

The court sentenced defendant to 420 months'

imprisonment: 360 months (concurrent terms) for the

carjackings charged in Counts One and Two, and a mandatory

consecutive 60-month term for the firearms violation charged

in Count Three. The concurrent carjacking sentences exceed

the statutory maximum.

Under the guidelines, the carjacking sentences were

calculated as follows. The base offense level, under USSG

2B3.1, for each carjacking count was 20. Six sets of

enhancements were added to each count, bringing the offense

level for Count One to 35, and for Count Two to 33. Since

these were "non-groupable offenses," applying USSG 3D1.4(a),

the court added two levels, bringing defendant's total

offense level for the two carjackings to 37. With a Category

I criminal history, this produced a guideline range for the

carjackings of 210-262 months. The court then departed

upward under USSG 5K2.3, and Application note 2 to USSG

2K2.4, arriving at the 360-month (concurrent) sentence. 

However, as the government concedes on appeal, the

statutory maximum term for the Count One carjacking (Nancy's

car) is 300 months. See 18 U.S.C. 2119(2). On Count Two, 

(Kassandra's car), the maximum is 180 months. See 18 U.S.C. 

2119(1). Concurrent terms for the carjackings were clearly

intended by the court, and so specified. Thus the sentence

on Counts One and Two should have been capped at the

-14-

statutory maximum for the highest count of conviction, or 300

months. See USSG 5G1.2(b)(c). Adding the 60-month 

mandatory consecutive sentence under 18 U.S.C. 924(c)),

produces a total allowable term of imprisonment for all three

counts of 360 months. 

We reject defendant's other assignments of error at

sentencing for the following reasons. 

(1) Two-level Enhancement for Perjury: There was (1) Two-level Enhancement for Perjury 

no clear error in the court's finding that defendant

intentionally attempted to obstruct justice by falsely

denying any involvement in the two carjackings and the rape.

See USSG 3C1.1; United States v. Tracy, 36 F.3d 199, 201 

(1st Cir.), cert. denied, 513 U.S. 1031 (1994).  

Defendant theorizes that his testimony may not

have been deliberately false but, since he is a drug addict,

the product of confusion, mistake, or faulty memory.

However, at trial he unequivocally testified to an alibi,

claiming to remember even the television programs he was

watching in his home at the time of the crimes. He

reiterated the alibi in his post-trial statement to the

probation officer. Given the several eyewitnesses who

instead placed him at the crime scenes, as well as the

fingerprint evidence, there was ample factual support for the

district court's finding. See United States v. Dunnigan, 507 

U.S. 87, 95 (1993). 

-15-

(2) Two Level Enhancement for Reckless Endangerment (2) Two Level Enhancement for Reckless Endangerment 

During Flight: There was no clear error in the court's During Flight 

finding that the high speed chase, along crowded roads,

created a substantial risk of death or bodily injury to

others, and actually resulted in bodily injury to Kassandra.

See USSG 3C1.2. 

Defendant argues that as a back-seat occupant, he

was not in control of the vehicle. However, there was ample

support for the court's finding that defendant ordered Daniel

to "take off," and otherwise aided and abetted Daniel

throughout the chase.

(3) Loss Exceeding $10,000: There is no clear (3) Loss Exceeding $10,000 

error in the court's findings that the loss to each victim,

including the value of their respective automobiles, exceeded

$10,000. Defendant's challenges in this regard are

frivolous. See USSG 2B1.1, comment. (n.2).  

(4) Serious Bodily Injury: The court's (4) Serious Bodily Injury: 

determination that Nancy suffered "serious bodily injury" due

to a protracted impairment of her mental faculties triggered

the twenty-five year maximum term of imprisonment on Count

One. See 18 U.S.C. 2119(2).3 In calculating defendant's 3 

 

3 The statute incorporates the definition of "serious 3
bodily injury," found in 18 U.S.C. 1365(g)(3), i.e., injury
involving "(A) a substantial risk of death; (B) extreme
physical pain; (C) protracted and obvious disfigurement; or
(D) protracted loss or impairment of the function of a bodily
member, organ or mental faculty . . . ."

-16-

guideline sentence, the court imposed a four-level

enhancement for "serious bodily injury" under USSG

2B3.1(b)(3), and departed upward under USSG 5K2.3.

The decision to apply the statutory penalty range

provided in 18 U.S.C. 2119(2), was amply supported by

evidence adduced at the sentencing hearing. Psychiatric

reports showed that as a result of the crime Nancy was

diagnosed with post-traumatic stress disorder and major

depression. Due to the mental trauma inflicted by the crime,

she attempted suicide at least twice, suffered auditory

hallucinations, and was hospitalized for psychiatric

treatment. She was forced to discontinue her career as a

pharmacist, had become emotionally distant from her children,

and dependent on her mother. The medical prognosis is that

she will require additional psychotherapy, hospitalizations,

and medical intervention for the rest of her life.

Defendant misplaces reliance on United States v. 

Rivera, 83 F.3d 542 (1st Cir. 1996). In Rivera there was no 

finding of protracted mental injury, and inadequate evidence

to sustain a finding that the victim had suffered "extreme

physical pain," as defined by the statute. Id. at 547. By 

contrast here, the court found that as a result of the crime

Nancy will suffer a lifetime impairment of her mental

 

-17-

faculties. See 18 U.S.C. 1365(g)(3)(D). It should also be 

noted that subsequent to the Rivera case, Congress enacted 

the Carjacking Correction Act of 1996, which amended the

definition of "serious bodily injury" to include rape and

sexual abuse.

The court's factual finding was amply supported by

evidence in the PSR and medical reports. There was no abuse

in the refusal to require live testimony. "Sentencing

hearings are not meant to be mini-trials." United States v. 

Robles-Torres, 109 F.3d 83, 86 (1st Cir. 1997) (citation 

omitted). 

As to the guidelines calculation, the court did not

exhaust its enhancement power under 2B3.1, by imposing a

four level increase for Nancy's "serious bodily injury."4 4

The finding that Nancy will suffer a lifetime of mental

illness could have been factored into the sentence as a six-

level enhancement for "permanent" bodily injury.5 Instead, 5

factoring in the permanency of the injury as an upward

 

4"Serious bodily injury" is defined in the sentencing 4
guidelines to mean "extreme physical pain or the impairment
of a function of a bodily member, organ or mental faculty; or
requiring medical intervention such as surgery,
hospitalization, or physical rehabilitation." USSG 1B1.1
comment. (n.1(j)).

5"Permanent or life-threatening bodily injury" includes 5
"loss or substantial impairment of the function of a . . .
mental faculty that is likely to be permanent." USSG 1B1
comment. (n.1(h)).

-18-

departure under USSG 5K2.3, p.s., did not amount to "double

counting." 

Defendant also fails to demonstrate that the court

abused its discretion in deciding that a lifetime of mental

illness is a "much more serious" injury than that "normally

resulting from commission of the offense" of carjacking.6 6

USSG 5K2.3, p.s. The court was not required to obtain

extrinsic "proof" of a comparatively "normal" level of

carjacking victims' injuries, but was entitled to rely on

other Guidelines cases and its superior knowledge of the

facts. Koon v. United States, 116 S. Ct. 2035, 2038 (1996); 

United States v. Rivera, 994 F.2d 942, 952 (1st Cir. 1993). 

(5) Upward Departure Under USSG 2K2.4, comment. (5) Upward Departure Under USSG 2K2.4, comment. 

(n.2) (n.2) 

Defendant argues that the court erred in applying

Application note 2 to USSG 2K2.4, which permits an upward

departure to compensate for the possible anomalous result of

an offender receiving a lighter guidelines sentence for an

underlying offense (carjacking) when he is also convicted of

a firearms offense under 924(c), than if he was convicted

solely of the underlying offense. 

 

6Defendant mistakenly assumes that the court should have 6
compared the victim's mental trauma to that "normally"
experienced by victims of rape. The offense charged was
carjacking; the use of rape as a means to control and
terrorize the victim contributed to the unusual degree of
mental injury inflicted on the victim as a result of the
charged offense.

-19-

Defendant misapprehends the guideline. In

calculating the sentencing range for the carjackings, the

court properly refrained from assessing a five level

enhancement for the brandishing of a firearm during the

offense. See United States v. McCarthy, 77 F.3d 522, 536 

(1st Cir. 1996), cert. denied, 117 S. Ct. 479, 771 (1997). 

This resulted in a guideline range for the carjackings of

210-262 months. Adding the mandatory 60-month consecutive

sentence for the violation of 18 U.S.C. 924(c), produced a

total sentence of only 322 months. By contrast, had there

been no separate count of conviction under 18 U.S.C. 

924(c), the enhancement for brandishing the weapon would have

increased the guidelines calculation of the carjacking

sentence alone to a level of 42, (360 months to life). This

computational anomaly justified an upward departure --

subject, of course, to an adjustment for the statutory

maximum.

Defendant's opposite reading of Application note 2,

as requiring a decrease in the maximum penalty for the

carjackings to offset the 60-month consecutive sentence for

the firearms offense,7 also ignores the court's broad 7

 

7This interpretation may be rooted in a mistaken 7
understanding of the double jeopardy clause. While defendant
does not directly argue the point here, in a previous appeal
he argued that the firearms charge should be dismissed
before trial because it violated the prohibition against
multiple punishment. The earlier appeal was dismissed on
jurisdictional grounds. United States v. Ramirez-Burgos, 44 

-20-

discretion. That a district court may consider lowering a 

guidelines sentence to offset a consecutive statutory minimum

in some circumstances does not mean that it is required to do

so. United States v. Webster, 54 F.3d 1, 4 (1st Cir. 1995). 

In sum, there was no abuse of discretion in the two

upward departures. Both were well explained and grounded in

record facts. See United States v. Twitty, 104 F.3d 1, 2 

(1st Cir. 1997); United States v. Quinones, 26 F.3d 213 (1st 

Cir. 1994). While the court did not separately specify the

extent of each, the oversight was harmless. But for the

statutory maximum, a five-level increase was warranted under

the Application note to 2K2.4 alone, bringing the penalty

range to 360 months to life. 

 

F.3d 17 (1st Cir. 1995); see also United States v. Stoller, 
78 F.3d 710, 715 & n.2 (1st Cir. 1996) (indicating
uncertainty about the continued vitality of the
jurisdictional ruling), cert. dismissed, 117 S. Ct. 378 
(1996).

Double jeopardy's prohibition against multiple
punishments, however, only prevents the imposition of a
stiffer sentence than the legislature intended. United 
States v. Page, 84 F.3d 38, 41 (1st Cir. 1996). Congress 
clearly intended that a term of incarceration under 924(c)
should be in addition to the punishment provided in 18 U.S.C.
2119. See United States v. Centeno-Torres, 50 F.3d 84, 85 
n.2 (1st Cir.) (citing additional cases), cert. denied, 116 
S. Ct. 208 (1995); cf. United States v. Gonzales, 513 U.S. 
132, --- (1997) (observing that Congress "has made clear its
desire to run 924(c) enhancements consecutively to all
other prison terms, [even] regardless of whether they were
imposed under firearms enhancement statutes similar to 
924(c)."). 

-21-

However, since the statutory maximum for the

highest count of conviction on the carjackings is 300 months,

we must vacate so much of the sentence as reflects a higher

concurrent term for Counts One and Two. The mandatory

consecutive 60-month sentence for the firearms offense brings

the permissible total sentence for all three counts to 360

months. 

The judgment of conviction is affirmed. The 

sentence on Counts One and Two is vacated and remanded to the 

district court with directions that the court enter a

sentence in accordance with this decision. In all other

respects, the sentence is affirmed. 

-22-