USCA1 Opinion

 

 November 3, 1995 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1094 UNITED STATES OF AMERICA, Appellee, v. LUIS RAUL RIVERA-GOMEZ, Defendant, Appellant. _________________________ ERRATA SHEET ERRATA SHEET The opinion of this court issued on October 12, 1995, is corrected as follows: On page 7, line 20, change "is only admissible" to "may be excluded" UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1094 UNITED STATES OF AMERICA, Appellee, v. LUIS RAUL RIVERA-GOMEZ, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ _________________________ Before Selya and Stahl, Circuit Judges, ______________ and Gorton,* District Judge. ______________ _________________________ Carlos A. Vazquez-Alvarez, Assistant Federal Public _____________________________ Defender, with whom Benicio Sanchez Rivera, Federal Public ________________________ Defender, was on brief, for appellant. Jose A. Quiles-Espinosa, Senior Litigation Counsel, with ________________________ whom Guillermo Gil, United States Attorney, and Edwin O. Vazquez, _____________ ________________ Assistant United States Attorney, were on brief, for the United States. _________________________ October 12, 1995 _________________________ _______________ *Of the District of Massachusetts, sitting by designation. SELYA, Circuit Judge. A jury convicted defendant- SELYA, Circuit Judge. _____________ appellant Luis Raul Rivera-Gomez on three counts of carjacking, 18 U.S.C. 2119, and three counts of aiding and abetting the use and carriage of firearms during and in relation to a crime of violence, 18 U.S.C. 2(a), 924(c). In terms of prison time, the trial judge imposed concurrent 180-month incarcerative sentences for the first two carjacking counts, a sentence of life imprisonment for the third carjacking, and concurrent sentences of five years, to run consecutively to the other sentences, for the firearms counts. This appeal challenges an evidentiary ruling, a case management ruling, and the constitutionality of the life sentence. I. BACKGROUND I. BACKGROUND The evidence adduced at trial involved three separate carjacking incidents. We sketch the facts as the jury warrantably could have found them, resolving all evidentiary conflicts in the government's favor and adopting all reasonable inferences therefrom that support the verdict. The first carjacking occurred on December 3, 1993. The victim, Cesar Correa Rivera (Correa), had driven a friend home. While they were parked outside her abode, a vehicle nudged Correa's car. Not knowing the vehicle or trusting its occupants, Correa tried to flee. After a brief chase, the rogue vehicle blocked Correa's path and two armed men alighted. One of the men, later identified as Jose Roman Hernandez (Roman), struck Correa on the head twice with his revolver and ordered him to 3 relinquish his valuables. Meanwhile, the second man, later identified as Rivera-Gomez, threatened Correa's companion with a gun. Appellant eventually ordered the victims to kneel and stare at the ground. Roman then departed in the carjackers' original vehicle, leaving appellant to drive Correa's automobile. Four days later, the same two marauders assaulted an elderly retired couple, Rufino Garcia Maldonado (Garcia) and his wife, Clara. The assault occurred when Clara left the couple's car to open the gate leading into their driveway. One man threatened her with a weapon and forced her to the ground, while the second man pointed a gun at Garcia's head, ordered him out of the car (a red Suzuki), and relieved him of his wallet. The robber then struck Garcia on the head, and he and his comrade drove off in the Suzuki. A short time later, the Garcias' Suzuki, with appellant at the wheel, pulled alongside a Mazda RX-7 operated by Reynaldo Luciano Rivera (Luciano). Roman, then a passenger in the Suzuki, pointed a gun at Luciano and ordered him to freeze. Instead of submitting to this minatory demand, Luciano stepped on the accelerator. At the same time, his companion, Dalia Hidalgo Garcia (Hidalgo), leapt to the ground. The predators fired in the direction of the escaping car, and, when it stopped, Roman shot Luciano in the head at point-blank range. Apparently realizing that they had killed the young man, Roman and Rivera- Gomez fled the scene without expropriating the Mazda. Soon thereafter, a homicide detective spotted a red 4 Suzuki in the vicinity and, having received a report of the latest incident, circled to pursue it. After a Hollywood-style chase involving several police vehicles, the Suzuki crashed. Appellant exited through the driver's door, and Roman exited from the passenger's side. The authorities quickly apprehended them. On January 5, 1994, a federal grand jury charged the two men with three counts of carjacking and three counts of aiding and abetting each other in the use of firearms during and in relation to crimes of violence. Count 3 of the indictment featured an allegation concerning Luciano's death. Though Roman entered a plea, appellant maintained his innocence. Following a three-day trial, a jury found appellant guilty on all six counts. This appeal ensued. II. DISCUSSION II. DISCUSSION Appellant advances three assignments of error. First, he maintains that the district court erred in admitting evidence of Luciano's death. Second, he argues that the court should have declared a mistrial when a prosecution witness stated in the jury's presence that Roman had pleaded guilty. Finally, he suggests that his life sentence punishes him for an offense with which he was never charged (Luciano's murder), and, thus, transgresses the Constitution. We address these reputed errors sequentially. A. Admission of Evidence of Victim's Death. A. Admission of Evidence of Victim's Death. _______________________________________ Appellant, who unsuccessfully moved in limine to __ ______ forestall the prosecution from showing that Luciano was killed in 5 the course of the third incident, asseverates that the victim's death was irrelevant to the question of guilt on the charge of attempted carjacking, and that no evidence concerning the death should have been admitted. Our study of this asseveration begins with the language of the carjacking statute, which provided on the date of appellant's offense: Whoever, possessing a firearm . . . takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall - (1) be fined under this title or imprisoned not more than 15 years, or both, (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both. 18 U.S.C. 2119 (Supp. V 1993). Appellant asserts that the district court mistakenly thought that the victim's death constituted an element of the offense, and allowed the evidence on that basis. This was error, he maintains, because subsection (3), the "death results" provision, is not an element of the offense, but, rather, is simply a sentencing enhancement mechanism. Thus, he concludes, the victim's death had no bearing upon the determination of guilt for the underlying offense, and should not have been brought to the jury's attention. As an inauguratory matter, we disavow appellant's assertion that the district court held the "death results" 6 provision to be a separate element of the offense of carjacking. As we parse the version of the statute under which Rivera-Gomez was convicted, the crime of carjacking had four elements, viz., ____ (1) taking (or attempting to take) from the person or presence of another, (2) by force, violence, or intimidation, (3) a motor vehicle previously transported, shipped, or received in interstate or foreign commerce, (4) while using or carrying a firearm.1 See United States v. Johnson, 32 F.3d 82, 85 (4th ___ ______________ _______ Cir.), cert. denied, 115 S. Ct. 650 (1994); United States v. _____ ______ ______________ Harris, 25 F.3d 1275, 1279 (5th Cir.) cert. denied, 115 S. Ct. ______ _____ ______ 458 (1994); United States v. Singleton, 16 F.3d 1419, 1422 (5th _____________ _________ Cir. 1994). The district court appears to have understood this structure, and the record suggests that the court did not consider the death of a victim to be a further (independent) element of the carjacking offense. Judge Laffitte stated at the pretrial hearing on the motion in limine that the death of the __ ______ victim was an offense element "not as such," but only as "part and parcel" of the "force and violence" element of the carjacking charge. In the same vein, the judge's jury instructions outlined  ____________________ 1Section 2119 has since been amended. In the 1994 crime bill, Congress substituted the phrase "with the intent to cause death or serious bodily harm" for the language requiring possession of a firearm. See Violent Crime Control and Law ___ Enforcement Act of 1994, 60003(a)(14), Pub. L. No. 103-322, 108 Stat. 1796, 1970. Thus, the new law leaves the offense with four elements, but changes the focus of the fourth element from weaponry to intention, requiring that the prosecution prove that the defendant perpetrated the crime with the specific intent of causing death or serious bodily harm. 7 the four essential elements of carjacking described above, saying nothing about "death results" as an independent element applicable to count 3. In our view, then, the court's admission of the evidence derived not from a misapprehension that the death constituted an independent offense element, but, rather, from a belief that evidence of Luciano's death helped to prove the essential "force and violence" element. The question that remains is whether the court blundered in allowing the government to present the challenged evidence as a means of proving that the carjackers employed force and violence in carrying out the third incident. We think not. It is difficult to conceive of a situation in which the death of a victim will not be relevant to the use of force and violence during the commission of an attempted carjacking. See ___ Fed. R. Evid. 401 (defining "relevant evidence"); United States _____________ v. Rodriguez, 871 F. Supp. 545, 549 (D.P.R. 1994) (approving _________ admission of evidence of "the victim's death as well as the manner and means by which it was accomplished" as relevant and "highly persuasive" of "force and violence" in a carjacking prosecution). This case is certainly not the exception that proves the rule. Nevertheless, relevancy does not tell the total tale. Evidence, though relevant, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. We turn, therefore, to the balance of 8 probative worth and unfair prejudice. In this instance, appellant insists that, even if evidence concerning the killing was probative of guilt under the force and violence element of the offense, it was not actually necessary to the prosecution's case the government had other evidence, such as the circumstances of the carjackers' initial encounter with the victim, that would have made the point and the likelihood was great that grisly details would stir the baser passions of the jurors and cloud their minds so that they could not make an objective appraisal of the evidence before them. Thus, appellant's thesis runs, the risk of unfair prejudice inherent in permitting the prosection to introduce evidence of the homicide substantially outweighed whatever incremental probative value the evidence may have supplied. We review a trial court's rulings admitting or excluding particular evidence for abuse of discretion. See ___ United States v. Holmquist, 36 F.3d 154, 163 (1st Cir. 1994), _____________ _________ cert. denied, 115 S. Ct. 1797 (1995); Veranda Beach Club Ltd. _____ ______ _________________________ Partnership v. Western Surety Co., 936 F.2d 1364, 1373 (1st Cir. ___________ __________________ 1991); United States v. Nazarro, 889 F.2d 1158, 1168 (1st Cir. _____________ _______ 1989). We grant the trial court especially wide latitude when Rule 403 balancing is the subject of review. "Only rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on- the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. Package Mach. Co., 865 F.2d _______ _________________ 9 1331, 1340 (1st Cir. 1988). This deference is equally due in criminal cases. See, e.g., United States v. Rodriguez-Estrada, ___ ____ ______________ _________________ 877 F.2d 153, 156 (1st Cir. 1989); United States v. Ingraham, 832 _____________ ________ F.2d 229, 233-34 (1st Cir. 1987), cert. denied, 486 U.S. 1009 _____ ______ (1988); United States v. Tierney, 760 F.2d 382, 388 (1st Cir.), _____________ _______ cert. denied, 474 U.S. 843 (1985). _____ ______ Through this modest lens, we see no cognizable defect in the district court's Rule 403 balancing. Whatever other evidence was available, evidence of Luciano's death remained highly probative of culpability for an essential element of a section 2119 offense. Presumably, like most evidence offered by the government in a criminal case, this evidence was designed to prejudice the jury against the defendant in the sense that exposure to it would render a conviction more likely. But the introduction of relevant evidence to influence perceptions is the stuff of our adversary system of justice. The law protects a defendant against unfair prejudice, not against all prejudice. ______ ___ See Rodriguez-Estrada, 877 F.2d at 155-56; Onujiogu v. United ___ _________________ ________ ______ States, 817 F.2d 3, 6 (1st Cir. 1987); see also Veranda Beach, ______ ___ ____ _____________ 936 F.2d at 1372 (explaining that "trials were never meant to be antiseptic affairs; it is only unfair prejudice, not prejudice per se, against which Rule 403 guards"). Since the evidence at issue is so tightly linked to guilt as defined by the elements of the offense, it would be surpassingly difficult to justify a finding of unfair prejudice stemming from its introduction. Here, moreover, there are several additional weights on 10 the scale favoring admissibility. For one thing, because the perpetrators fled immediately after the shooting, leaving behind both the Mazda and a dying man in the driver's seat, the government's case on count 3 depended on its ability to prove attempted carjacking. Without knowing of Luciano's death, the jury may have been left to wonder why two supposed carjackers had turned their backs on an expensive, late-model sports car. For another thing, Hidalgo, understandably concerned with her own safety at the time the incident occurred, could give only limited testimony as to what transpired, and there was a definite risk that the jury, if uninformed of Luciano's passing, would engage in speculation as to why the prosecution did not offer his testimony at trial. See, e.g., United States v. Accetturo, 966 ___ ____ _____________ _________ F.2d 631, 637 (11th Cir. 1992) (holding the fact of a witness's death admissible as "relevant to explain the fact that [the witness] did not testify" and to prevent the jury from speculating), cert. denied, 113 S. Ct. 1053 (1993); see also _____ ______ ___ ____ United States v. Williams, 51 F.3d 1004, 1010 (11th Cir. 1995) ______________ ________ (citing Accetturo in admitting evidence of a victim's death in a _________ carjacking prosecution), petition for cert. filed (U.S. Aug. 11, ________ ___ _____ _____ 1995) (No. 95-5555). These considerations, taken in the aggregate, underscore the invulnerability of the district court's ruling. The evidence here did more than tend to show guilt on one element of the offense; it also constituted a crucial chapter in the government's narrative account of appellant's carjackings, 11 allowing the jury to put matters into perspective. Trial evidence is supposed to help the jury reconstruct earlier events and then apportion guilt or responsibility as the law may require. Rule 403 exists to facilitate this process, not to impede it. We think it follows that, although a "controlled environment for the reception of proof is essential, . . . an artificially sterile environment is neither necessary nor desirable." Wagenmann v. Adams, 829 F.2d 196, 217 (1st Cir. _________ _____ 1987); see also United States v. McRae, 593 F.2d 700, 707 (5th ___ ____ _____________ _____ Cir.) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."), cert. denied, 444 U.S. 862 (1979). _____ ______ When a trial court in a criminal case exercises discretion at first hand, the court of appeals should go very slowly in interfering with its judgment calls. The need for caution is magnified when, as now, a challenged ruling has the effect of vindicating the government's well-established "right to present to the jury a picture of the events relied upon . . . including proof of all elements of the crime for which the defendant has been brought to trial." United States v. Tavares, _____________ _______ 21 F.3d 1, 3-4 (1st Cir. 1994) (en banc) (citation and internal quotation marks omitted). Here, the disputed evidence is both picture and proof; though lurid, it is part of what old-fashioned 12 lawyers might call the res gestae, and it is directly probative ___ ______ of an element of the offense. Consequently, the court did not err in admitting it. After all, it is the rare case in which a court must require that the story of the crime be spoon-fed to jurors in bits and pieces from which every drop of juice has been drained. B. Denial of Mistrial Motion. B. Denial of Mistrial Motion. _________________________ During his trial testimony, a prosecution witness, homicide detective Lama-Canino, blurted out that Roman (appellant's partner in crime) had entered a guilty plea. Judge Laffitte immediately struck the statement, instructed the jurors to disregard it, and warned them not to ponder the codefendant's fate. However, the court refused to declare a mistrial. Appellant assigns error. The trial judge is best situated to make a battlefield assessment of the impact that a particular piece of improper information may have on a jury. See United States v. Lau, 828 ___ _____________ ___ F.2d 871, 874 (1st Cir. 1987), cert. denied, 485 U.S. 1005 _____ ______ (1988). For this reason, we have long recognized that motions for mistrial are committed to the presider's discretion, see, ___ e.g., United States v. De Jongh, 937 F.2d 1, 3 (1st Cir. 1991), ____ _____________ ________ especially when such a motion is predicated on some spontaneous trial development that can best be gauged in the ebb and flow of the trial itself, see United States v. Pierro, 32 F.3d 611, 617 ___ _____________ ______ (1st Cir. 1994), cert. denied, 115 S. Ct. 919 (1995). Our _____ ______ reluctance to intervene is often reinforced by an awareness that 13 in most cases a firm, timely curative instruction will adequately quell the potential for prejudice. See United States v. ___ ______________ Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993), cert. denied, 114 _________ _____ ______ S. Ct. 2714 (1994); United States v. Ferreira, 821 F.2d 1, 5-6 ______________ ________ (1st Cir. 1987). Although every trial is different, and, therefore, every mistrial motion is sui generis, the assignment of error in ___ _______ this case is reminiscent of that advanced in United States v. _____________ Bello-Perez, 977 F.2d 664 (1st Cir. 1992). There, the ___________ defendant's paramour twice blurted out that the defendant had suffered a gunshot wound in an event unrelated to the drug trafficking conspiracy with which he was charged. See id. at ___ ___ 672. The district judge gave a contemporaneous curative instruction on each occasion, and refused to declare a mistrial. We upheld the ruling. See id. ___ ___ Here, as in Bello-Perez, the trial court's handling of ___________ the witness's rash comment was well within the broad range of its discretion. The analogy operates on at least three levels.2 First, here, as in Bello-Perez, the offensive information, though ___________ unfit for jury consumption, was not of a kind that might be  ____________________ 2Appellant belatedly attempts to distinguish the two cases on the ground that here, unlike in Bello-Perez, 977 F.2d at 672, ___________ the offending witness a police officer acted in bad faith by deliberately uttering the improper testimony. At the time, however, appellant's counsel expressed his agreement with the judge's assessment that the witness had made a spontaneous, accidental slip of the tongue. That ends the matter. Arguments not raised in the lower court cannot be unfurled for the first time on appeal. See United States v. Slade, 980 F.2d 27, 30 (1st ___ _____________ _____ Cir. 1992). 14 thought irredeemably to poison the well. The fact that Roman pleaded guilty had no bearing upon appellant's primary line of defense mistaken identity and had nothing to do with the government's attempt to prove that Rivera-Gomez was the man who accompanied Roman during the carjacking spree. Second, the strength of the government's overall case is frequently a cardinal factor in evaluating the denial of a mistrial motion. Here, as in Bello-Perez, the prosecution's case ___________ was extremely robust. There is a correspondingly small risk, therefore, that Lama-Canino's wayward remark could have been the straw that broke the dromedary's back. See United States v. ___ ______________ Scelzo, 810 F.2d 2, 5 (1st Cir. 1987). ______ Third, permitting the trial to proceed is more palatable because, as in Bello-Perez, the judge gave an immediate ___________ curative instruction a device that we have regularly endorsed as a means of dispelling potential prejudice. See United States ___ _____________ v. Chamorro, 687 F.2d 1, 6 (1st Cir.), cert. denied, 459 U.S. ________ _____ ______ 1043 (1982). We not only believe that the language used by the court fit the occasion, but we also take heed that appellant did not then or now suggest a more felicitous phrasing. At the expense of carting coal to Newcastle, we note, too, that the judge, in a commendable abundance of caution, again admonished the jurors in his final instructions that appellant alone was on trial, and that Roman's guilt or innocence was not a matter with which they should concern themselves. We are confident that these instructions, in combination, eliminated any prospect of 15 prejudice that might otherwise have flowed from the gratuitous aside. As a fallback position, appellant claims that the district court's instructions did more harm than good, reminding the jury of the substance of the improper observation. In some respects, of course, instructions cautioning jurors to disregard testimony may often appear to turn evidence into a form of forbidden fruit. Every parent knows that admonitions to refrain sometimes only emphasize the attraction. Cf. Tom Jones & Harvey ___ Schmidt, Never Say No (The Fantastiks, 1960) ("My son was once ____________ afraid to swim; the water made him wince. Until I said he mustn't swim; he's been swimmin' ever since."). But jurors are not children, and our system of trial by jury is premised on the assumption that jurors will scrupulously follow the court's instructions. See Richardson v. Marsh, 481 U.S. 200, 206 (1987); ___ __________ _____ Francis v. Franklin, 471 U.S. 307, 324 n.9 (1984); Sepulveda, 15 _______ ________ _________ F.3d at 1185. Here, we have no basis (apart from appellant's self-interested speculation) to presume that the evils of the cure exceeded those of the disease, and we therefore decline appellant's unsupported invitation to surmise that the jury took the wrong message from the curative instruction. To recapitulate, given the nature of the taint, the strength of the government's case, and the promptness of the district court's instructions, we are unprepared to say that the court misused its discretion in denying the mistrial motion. See ___ United States v. Sclamo, 578 F.2d 888, 891 (1st Cir. 1978) ______________ ______ 16 (upholding a denial of mistrial after witness' improper comment, "in light of the strong case and substantial evidence produced by the government, and in view of the court's cautionary words to the jury concerning stricken testimony"). C. Imposition of a Life Sentence. C. Imposition of a Life Sentence. _____________________________ In his final foray, appellant takes aim at the life sentence imposed on count 3. Having argued earlier that the "death results" provision of the statute of conviction, 18 U.S.C. 2119 (3), is not an element of the offense, see supra Part ___ _____ II(A), appellant now posits that the life sentence he received punishes him for a crime Luciano's murder with which he was never charged, and that, therefore, his sentence offends the Constitution. We discern no constitutional infirmity. Appellant's argument is not entirely without foundation. We agree with him that subsection (3) demarcates a sentence-enhancing factor, and does not establish a separate offense with an additional element. After all, not every matter mentioned in the text of a criminal statute comprises an element of the offense. To be sure, attempting to distinguish between offense elements and sentence enhancers can sometimes be a daunting task. When deciding how a particular statutory allusion should be construed, an inquiring court must mull the language and structure of the statute, and, when necessary, its legislative history. See United States v. Forbes, 16 F.3d 1294, 1298 (1st ___ ______________ ______ Cir. 1994); United States v. Ryan, 9 F.3d 660, 667 (8th Cir. ______________ ____ 17 1993), modified on other grounds, 41 F.3d 361 (8th Cir. 1994) (en _________________________ banc), cert. denied, 115 S. Ct. 1793 (1995); United States v. _____ ______ _____________ Rumney, 867 F.2d 714, 717-19 (1st Cir.), cert. denied, 491 U.S. ______ _____ ______ 908 (1989); United States v. Jackson, 824 F.2d 21, 23-24 (D.C. _____________ _______ Cir. 1987). The structure of section 2119, the unexpurgated text of which is quoted supra at p. 5,3 strongly indicates that Congress _____ intended its subsections to be sentence-enhancing factors and not elements constituting separate species of carjacking offenses. The initial paragraph of the statute establishes the crime of carjacking. That paragraph ends with the word "shall," followed by three subsections. These subsections are not structurally independent provisions in which the essential elements of carjacking are redefined and embellished with additional components. Rather, the structure is integrated, and the statutory provisions form a seamless whole. The first subsection limns the base sentence, and the following two subsections clear the way for enhanced sentences if either serious bodily injury or death results from the commission of the carjacking offense. Ripped from their textual moorings, subsections (2) and (3) would be little more than gibberish; they are incapable of "stand[ing] alone, independent of the [underlying] offense." Ryan, 9 F.3d at 667. Consequently, this ____ statutory structure comprises persuasive evidence that Congress  ____________________ 3The 1994 amendment, discussed supra note 1, does not affect _____ our analysis of these subsections. 18 intended the second and third subsections simply to augment the sentences for certain aggravated carjackings, not to establish additional offenses with independent elements. Accord United ______ ______ States v. Oliver, 60 F.3d 547, 552 (9th Cir. 1995); Williams, 51 ______ ______ ________ F.3d at 1009. Although this reading is the most natural and sensible, especially given the interdependence of the provisions, we go the extra mile and venture into the legislative history for confirmation of Congress's intent. The path is plainly marked, see Oliver, 60 F.3d at 553, and we can deduce no reason to ___ ______ retrace its contours. The Eleventh Circuit has collected and canvassed the relevant historical materials, examined them perspicaciously, and concluded that the background of section 2119 makes manifest that Congress intended subsection (3) to be a sentence enhancer, not a separate offense. See id. This ___ ___ conclusion is unarguable, and we adopt it. Having concluded that 18 U.S.C. 2119(3) is a sentence-enhancing factor, we next consider the constitutionality vel non of appellant's life sentence on count 3. Viewed as a ___ ___ sentence-enhancing factor, subsection (3) represents a congressional judgment that the punishment for committing the crime of carjacking should be harsher if the offense, as actually perpetrated, includes conduct that produces the demise of a victim. In this sense, the architecture of the carjacking statute bears a family resemblance to the design of the federal sentencing guidelines, which make generous use of "sentencing 19 enhancement regimes evincing the judgment that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." Witte v. United States, 115 S. _____ _____________ Ct. 2199, 2208 (1995). For example, under U.S.S.G. 1B1.3, "this court has repeatedly upheld the inclusion as relevant conduct of acts either not charged or charged but dropped," and authorized resort to that conduct as a sentence-enhancing datum. United States v. Garcia, 954 F.2d 12, 15 (1st Cir. 1992) ______________ ______ (collecting cases). By like token, a defendant convicted of drug trafficking will find his sentence enhanced if it turns out that he possessed a dangerous weapon during the commission of the crime, see U.S.S.G. 2D1.1(b)(1), or if a victim died under ___ circumstances that would constitute murder, see id. 2D1.1(d). ___ ___ The Supreme Court has made it pellucid that such sentencing enhancement schemes do not constitute punishments for separate offenses: "the fact that the sentencing process has become more transparent under the guidelines . . . does not mean that the defendant is now being `punished' for uncharged conduct as though it were a distinct criminal `offense.'" Witte, 115 S. _____ Ct. at 2207; see also id. at 2206-07 (explaining that the ___ ____ ___ consideration given to particular aspects of character and conduct at sentencing "does not result in `punishment' for any offense other than the one of which the defendant was convicted"). So it is here. Appellant is not being punished for the uncharged crime of murder, but, rather, he is being punished 20 more severely for the crime of carjacking because his conduct during the commission of the crime led to the loss of a victim's life. Of course, the burgeoning use of sentence enhancers by Congress and the Sentencing Commission as part of the catechism of punishment poses an obvious danger that, in extreme circumstances, the lagniappe might begin to overwhelm the main course. In all probability, there are constitutional limits on the way sentencing factors can be deployed in the punishment of a substantive offense. See id. at 2208; McMillan v. Pennsylvania, ___ ___ ________ ____________ 477 U.S. 79, 88 (1986). But that proposition is only of academic interest where, as here, the sentence enhancement scheme "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty." McMillan, 477 ________ U.S. at 87-88. In this case, under appellant's own reading of the law, Congress has, in essence, established a statutory maximum sentence of life imprisonment for carjacking, and authorized courts to levy such a sentence when a defendant's conduct results in the victim's death. This paradigm is no different in its legal effect than if Congress had set a statutory range of up to life in prison, and the sentencing guidelines, through a web of enhancement factors, had authorized a sentence of life only on a finding by the sentencing court that the crime resulted in 21 death.4 In fine, section 2119 establishes only one offense and sets a range of punishment for that offense, varying according to conduct. So viewed, the sentencing scheme crosses no constitutional boundaries. III. CONCLUSION III. CONCLUSION We need go no further. From aught that appears, appellant was fairly tried, justly convicted, and lawfully sentenced. Affirmed. Affirmed. ________  ____________________ 4One might argue that because a judge has no discretion to impose a life sentence unless death results, 2119(c)(3) amounts ______ to a "rule" establishing a separate, uncharged offense. This argument would fail. "Regardless of whether particular conduct is taken into account by rule or as an act of discretion, the defendant is still being punished only for the offense of conviction." Witte, 115 S. Ct. at 2207. _____ 22